833 F.2d 1013
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Gerald STEVENSON, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 87-1092.
 United States Court of Appeals, Sixth Circuit.
 Nov. 24, 1987.
 
 Before ENGEL and CORNELIA G. KENNEDY, Circuit Judges; and GEORGE CLIFTON EDWARDS, Jr., Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Gerald Stevenson, plaintiff, appeals from the judgment of the United States District Court for the Eastern District of Michigan accepting the magistrate's report and recommendation to deny plaintiff both disability insurance benefits and supplemental security income benefits and granting defendant's motion for summary judgment.
 
 
 2
 Plaintiff is forty-four years old, has a twelfth grade education and has completed a six-month welding course. He was employed as a welder at Ford Motor Company from 1978 to 1980. Prior to his employment at Ford the plaintiff had worked as a laborer in several different jobs.
 
 
 3
 Plaintiff applied for disability insurance benefits and supplemental security income benefits on July 14, 1982 alleging that he became disabled because of cervical and lower back disc problems. The Department of Health & Human Services then denied both claims initially and upon reconsideration. After a hearing on the matter an administrative law judge (ALJ) denied both applications, finding that Mr. Stevenson did not have a severe impairment and that he was not under a disability as defined in the Social Security Act. The Appeals Council, finding that there was no basis for review denied Mr. Stevenson's request for review.
 
 
 4
 On December 13, 1983 plaintiff filed an action in the United States District Court for the Eastern District of Michigan seeking to have the decision denying benefits set aside and that the Secretary of Health & Human Services be ordered to make payment on the claim. The matter was referred to a U.S. Magistrate who recommended that the matter be remanded to the Secretary for further proceedings to determine:
 
 
 5
 (1) whether plaintiff retained residual functional capacity to perform other work in the economy;
 
 
 6
 (2) whether there are any jobs that plaintiff could perform; and
 
 
 7
 (3) why the plaintiff had failed to undergo a myelogram as recommended by Dr. Glass in February 1981.
 
 
 8
 On December 17, 1984 the district court remanded the case to the Secretary, but provided that the matter would be reinstated if the Secretary again denied benefits.
 
 
 9
 A second hearing was held before a different ALJ who also recommended that benefits be denied. The Appeals Counsel considered the claim but remanded the matter back to the ALJ for reconsideration of the recommendation in light of recently adopted mental impairment guidelines. After another hearing the ALJ renewed his recommendation that benefits be denied because plaintiff was not under a disability as defined in the Act. The Appeals Counsel accepted the ALJ's findings and recommendation with minor modifications:
 
 
 10
 1. The claimant met the disability insured status requirements of the Act on April 3, 1980, the date the claimant alleges he became unable to work, but he continued to meet these requirements only through December 31, 1980. The claimant filed an application for supplemental security income on July 14, 1982.
 
 
 11
 2. The claimant has not engaged in substantial gainful activity since April 3, 1980.
 
 
 12
 3. The medical evidence establishes that the claimant has a successful and well recovered status post cervical laminectomy despite continuing complaints, and some possible mild Sl radiculopathy with complaints of pain exaggerated to the mild neurological manifestations. He does not have an impairment or combination of impairments listed in, or medically equal to one listed in, Appendix 1, Subpart P, Regulations No. 4.
 
 
 13
 4. The claimant may experience some mild back discomfort, but the severity and frequency of his complaints of pain and dysfunction, including a need to lie down and testimony as to sitting and weight manipulation were inconsistent, not persuasively presented, and exaggerated to the medical evidence of record.
 
 
 14
 5. The claimant has had the residual functional capacity to perform work-related activities except for work involving the lifting of more then ten pounds, prolonged standing or walking, or any sedentary tasks that would not allow for a sit/stand option for the relief of perceived stiffness and discomfort. The claimant does not have any medically determinable emotional or mental impairment, and there are no limitations referable to this system (20 CFR 404.1545 and 416.945).
 
 
 15
 6. The claimant is unable to perform his past relevant work.
 
 
 16
 7. The claimant has the residual functional capacity to perform sedentary work.
 
 
 17
 8. The claimant at all times relevant has been a younger individual.
 
 
 18
 9. The claimant has a high school education and specialized training in welding.
 
 
 19
 10. In view of the claimant's age and residual functional capacity, the issue of transferability of work skills is not material, although vocational testimony establishes no transferable skills to sedentary employment.
 
 
 20
 11. If the claimant's nonexertional limitations did not significantly compromise his ability to perform sedentary work, Rule 201.28, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 indicates that a finding of not disabled would be appropriate. Since his capacity to perform sedentary work is significantly compromised, the remaining work which he would functionally be capable of performing is considered in combination with his age, education, and work experience to determine whether a work adjustment could be made.
 
 
 21
 12. Considering the types of work which the vocational expert testified that the claimant is still functionally capable of performing in combination with his age, education and work experience, he can be expected to make a vocational adjustment to work which exists in significant numbers in the national economy. Examples of such jobs are hand packager, bench assembly jobs, hand filer, hand straightener and visual inspection jobs.
 
 
 22
 13. The claimant was not under a "disability," as defined in the Social Security Act at any time through the date of this decision (20 CFR 404.1520(f)).
 
 
 23
 (The portions underlined above demonstrate where the Appeals Counsel modified the ALJ's findings.)
 
 
 24
 The matter was reinstated in the district court and referred back to a United States magistrate for a report and recommendation. Both plaintiff and defendant filed motions for summary judgment. On October 22, 1986 the magistrate recommended that the district court grant defendant's motion for summary judgment and enter judgment for the Secretary. After hearing oral argument on plaintiff's objections to the magistrate's report and recommendations, the district court granted defendant's motion for summary judgment and dismissed plaintiff's action. Plaintiff appeals.
 
 
 25
 Plaintiff apparently injured his neck in November 1979. He ceased employment with Ford on April 3, 1980 and underwent a laminectomy for a herniated cervical disc in May of 1980. There is conflicting medical evidence in the record as to plaintiff's subsequent level of impairment, if any. Both the Appeals Counsel and the ALJ noted that the plaintiff, despite claims of continuous lower back pain, has failed to seek any medical treatment since approximately 1981 or 1982 and that he has not used any prescription medication to alleviate this pain. There are also significant questions of credibility reflected in the record. Perhaps the most damaging is a September 1, 1981 medical record which states that while in the doctor's office Stevenson claimed he could barely walk but was seen by the doctor a few minutes later walking down the hallway standing straight and walking with no apparent distress. Additional questions are posed by plaintiff's refusal to take a second myelogram as suggested by his doctor. Plaintiff initially expressed fear that a myleogram might result in paralysis or sexual dysfunction. Plaintiff later stated that he could not have the procedure performed because his medical insurance had expired, although it actually appears that his benefits had not expired.
 
 
 26
 The plaintiff argues that he is entitled to disability benefits because he is unable to meet the full range of sedentary work as defined in the regulations. Specifically plaintiff relies upon Wages v. Secretary of Health and Human Services, 755 F.2d 495 (6th Cir.1985), for the proposition that a claimant of social security benefits who cannot sit or stand for prolonged periods of time, but must alternate between sitting and standing as required for comfort is not capable of performing sedentary work. Plaintiff contends that the determination that plaintiff could perform sedentary work is based upon insufficient medical data and assumptions not evidenced in the record. Of particular concern was a hypothetical question to a vocational expert asking him to assume the capacity to sit for 6 of 8 hours. Plaintiff further contends that the ALJ and district court failed to consider medical evidence supporting plaintiff's allegations of pain.
 
 
 27
 The defendant first argues that Stevenson's allegations of disabling pain and dysfunction were not supported by objective evidence. Second, defendant argues that plaintiff waived all other arguments set forth in his brief by failing to raise them before the district court in his objections to the magistrate's report and recommendation.
 
 
 28
 The extensive procedural history of this case well illustrates the care necessary to assure that each level of consideration and review in social security cases is properly performed. While it might be argued that the final outcome was no different from the original result, and could have been mercifully shorter, nonetheless we are satisfied that the ultimate decision was reached in a manner conforming to the correct standards. We are of course obliged under Mullen v. Bowen, 800 F.2d 535 (6th Cir.1986), to accept the determinations of the Appeals Council when supported by substantial evidence even though they may depart from findings of the ALJ. Upon our own very careful review of the entire record, we are satisfied that those findings are supported by substantial evidence. We are further of the opinion that plaintiff's reliance upon Wages v. Secretary, supra, is misplaced in view of the evidence concerning plaintiff's credibility relating to the extent of his pain. While the evidence indicates that the plaintiff's pain may have been real to some extent, the actual severity of it was the subject of conflicting evidence. Because the decision of the Appeals Council was clearly supported by objective and credible evidence we do not believe it is our function or that of the district court to disturb it. We therefore agree with the district court that substantial evidence supports the Secretary's denial of social security disability and supplemental security income benefits and, accordingly, the judgment of the district court is AFFIRMED.
 
 
 29
 EDWARDS, dissenting.
 
 
 30
 Plaintiff is now 44 years old, has a 12th grade education and some additional welder's training. His last job was as a welder at Ford Motor Company from 1978 to 1980.
 
 
 31
 The evidence indicates that the plaintiff injured his neck in November of 1979. He underwent a laminectomy on May 20, 1980 for a herniated cervical disc that was causing nerve root compression. Following the surgery, plaintiff reported that the pain in his neck had subsided. However, on June 27, 1980, he reported pain in his lower back that radiated down his left leg. In August, 1980, plaintiff was hospitalized for approximately three weeks for the lower back pain. On October 28, 1980, a lumbar myelogram was performed, but it showed no significant abnormalities.
 
 
 32
 The Administrative Law Judge who heard this case determined that plaintiff was able to do sedentary work so long as it required lifting no more than five pounds, required no prolonged standing or walking, and permitted the plaintiff a sit/stand option to alleviate his stiffness and soreness. There really is no dispute about the nature of appellant's injuries. What is in dispute is his employability.
 
 
 33
 As this court noted in Wages v. Secretary of Health and Human Services, 755 F.2d 495, 498 (6th Cir.1985), the Secretary's own rulings cast doubt on the availability of jobs for those in the plaintiff's position. In SSR 83-12, the Secretary has stated:
 
 
 34
 There are some jobs in the national economy--typically professional and managerial ones--in which a person can sit or stand with a degree of choice. If an individual had such a job and is still capable of performing it, or is capable of transferring work skills to such jobs, he or she would not be found disabled. However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will.
 
 
 35
 I recognize that a vocational expert testified that there were approximately 13,000 jobs in the State of Michigan which would accommodate plaintiff's work restrictions. I consider this testimony so utterly implausible that it should be rejected by this court and benefits should be awarded.